## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RLP Ventures, LLC<br><br>                     Plaintiff,<br>          v.<br><br>Sonic Foundry, Inc.<br><br>              Defendant. | Civil Action<br><br>_____ |

### COMPLAINT AND JURY DEMAND

Plaintiff RLP Ventures LLC ("**Plaintiff**"), with knowledge as to its own conduct and upon information and belief as to the conduct of all others hereby complains against Defendant Sonic Foundry, Inc. ("**Defendant**") as follows:

### SUMMARY AND NATURE OF THE ACTION

1.      This action seeks a decision on federal trademark infringement and unfair competition under the Lanham Act and on trademark infringement and unfair competition under New York common law.  Plaintiff is also opposing the registration of Defendant's mark.

### THE PARTIES

2.      Plaintiff is a limited liability company existing under the laws of the State of New York with an address of Lincolnton Station, P.O. Box 1045, New York, NY 10037.

3.     On information and belief, Defendant is a corporation organized under the laws of the State of Maryland with an address of  222 West Washington Avenue, Suite 775; Madison, Wisconsin. 53703

### JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and § 1125(c) and 28 U.S.C. § 1338(a) because this action arises under an Act of Congress relating to trademarks, as it involves Defendant's infringement of Plaintiff's federally registered trademark.

5.     This Court also has supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1338(b) over all non-federal claims, because they are related to the claims arising under federal law. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

6.     Personal jurisdiction over Defendant is proper pursuant to N.Y. C.P.L.R. § 302(a).  On information and belief, Defendant has advertised and solicited business in the State of New York and this District through its website and promotional activities bearing the infringing mark.  Further, on information and belief, Defendant has wrongfully caused injury to Plaintiff and its property in the State of New York and this District, and personal jurisdiction over Defendant is reasonable and comports with fair play and substantial justice.

### HISTORY; FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.**     **The United States Trademark Trial and Appeal Board (TTAB) Proceedings**

7.     This action follows an opposition proceeding before the TTAB (Opposition No: 91267495).  In the proceeding, Plaintiff filed original and amended pleadings and Defendant filed an original and amended answers and counterclaims.

8.     In the decision, the TTAB held, among other things, that  although Plaintiff had proven it was entitled to a statutory cause of action and priority, (A) Plaintiff had not proven that Defendant lacked and continued to lack a bona fide intent to use in commerce the proposed mark MEDIASITE MOSAIC ("**Defendant's Mark**") as of the filing date of Application Serial No. 90/064,439 ("**Defendant's Application**") and continuously throughout the time that the Defendant's Application had been pending in International Classes 9 and 42 and (B) Plaintiff had failed to prove likelihood of confusion by a preponderance of the evidence.  **Exhibit K**, attached hereto and incorporated herein by reference, shows the documents that constitute Defendant's Application.

9.     On information and belief, the standard for review for the TTAB is a comparison of an opposer's services with the services recited in an applicant's application and the standard for review of the allegations herein are different.  For example, the review for a claim of infringement in this Court includes a comparison of the actual services of the parties.

10.     Plaintiff asserts that (i) Plaintiff has prior use of its mark in the Class 9 and Class 42 in similar or related goods and services to those recited in Defendant's application; (ii) Plaintiff uses its mark on a wide variety of goods and services and customers are more likely to view Defendant's similar or related to goods and services under a similar mark as

an extension of Plaintiff's line and (iii) there was and continues to be evidence that Plaintiff's Mark (as defined herein below) as well as that the channels of trade and classes of customers overlap in Classes 9 and 42. Accordingly, Plaintiff is seeking relief from this Court, as discussed in more detail below.

**B. Plaintiff and the Origins of the MOSAEC Mark**

11.     Plaintiff is the owner and operator of an entity using the trademark "MOSAEC" ("**Plaintiff's Mark**"). The MOSAEC platform is a commerce, content, advertising, and social media ecosystem that spotlights a variety of subjects, including film, music, art, theater, dance, literature, fashion, sports, locales as well as culture. The platform has also been used for educational and philanthropic services. In addition, via the MOSAEC platform, Plaintiff sells consumer goods, buys and sells advertising, as well as seeks funding from individuals, corporations and governments.

12.     The MOSAEC engagement platform encourages people from diverse cultures and countries to connect via virtual and in-person community interactions. The MOSAEC platform allows users to connect with other users and to provide electronic media or information, including text, audio, graphics, still images and moving pictures.

13.     The use of Plaintiff's Mark commenced as early as September 1998. The concept for the MOSAEC platform was developed during calendar years 1996 – 1998. The MOSAEC-branded platform was initially conceptualized in paper form and later transitioned to a digital format. Aspects of the business plan and source code for the MOSAEC platform were developed by Plaintiff during calendar years 1996 – 1999 during courses Plaintiff's owner took at New York University and other schools.

14.     The MOSAEC platform was released first in a "beta" form during the fall of 1998 (see for example, ***Exhibit A***, attached hereto and incorporated herein by reference, which shows a copy of "beta" webpages).  The beta version of the website was used, in part, to recruit talent, seek funding, and sell ads (see for example ***Exhibit B***, attached hereto and incorporated herein by reference, which shows a copy of a fundraising postcard mailed in 1998 and receipts from the US Postal Service for postage).  The "gamma" version of the platform was launched in the spring of 1999.  Since its 1999 launch, the MOSAEC platform has been accessible throughout the United States (including, without limitation, in Wisconsin - the apparent base of operations for Defendant) and internationally, with users engaging with the platform's content and purchasing its consumer goods.  Contributors to the MOSAEC platform have resided throughout the United States.  Through the use of the MOSAEC platform, consumer goods have been distributed to its users and contractors throughout the United States.  Plaintiff recruited MOSAEC platform contributors who were youth and adult students and who expressed an interest in the fields of journalism and/or entertainment (see, for example, ***Exhibit C***, attached hereto and incorporated herein by reference, which shows emails sent to recruit contributors in January and February 1999).

***Exhibit D***, attached hereto and incorporated herein by reference, shows a letter dated March 16, 1999 sent to contributors to MOSAEC, noting MOSAEC's mentoring, career planning advice and networking opportunities offered to students from Columbia, Howard and Hunter. Experience during the summer of 1999.  In May 1999, Plaintiff mailed information about its one-to-one instruction and guidance for new journalists, including a New Journalist Application, Mentoring Agreement and description of Plaintiff's MOSAEC experiential learning program (see, for example, ***Exhibit E***, attached hereto and

incorporated herein by reference, which shows a true and correct copy of US Postal Service mail returned to Plaintiff that included a cover letter dated May 10, 1999 with a "New Journalist Application;" a blank "Mentoring Agreement;" a description of the "MOSAEC Experience;" and a stamped envelope with a postal date of May 11, 1999 offered under the MOSAEC mark).  ***Exhibit F,*** attached hereto and incorporated herein by reference, shows a webpage from the MOSAEC media site that allows users to connect with other users and to provide electronic media or information, including text, audio, graphics, still images and moving pictures.

15.     Plaintiff built the MOSAEC platform from the ground up, investing substantial amounts of time and money, including promoting the MOSAEC platform via national and international advertising channels.  With great effort, Plaintiff has continued to operate the MOSAEC platform through market downturns (2001 and 2009).

16.     Since the adoption of Plaintiff's Mark, the MOSAEC platform has been used and accessed by a notable number of users.  For example, since 2008, there have been over 948,000 YouTube views of videos incorporating the MOSAEC brand in connection with Plaintiff's services.  Since 2009, there have been as high as 142,000 likes recorded in connection with the Facebook presence associated with the MOSAEC platform.  On Twitter (now "X"), since 2009, the MOSAEC platform's page has garnered as high as 8,900 followers - including film studios, television studios, public relation agencies, talent and crewmembers.  Branded tweets have been retweeted by Tribeca Film Festival, which at the time had over 204,000 followers, tweeted by Michael Skolnik (@MichaelSkolnik), who, at the time, had over 269,000 followers and retweeted by Brad Gilbert (@bgtennisnation), who, at the time, had over 139,000 followers.  The LinkedIn presence

for the MOSAEC platform has been in existence since 2009 and an Instagram presence has been in existence since 2015.

### C.      Defendant and the Latter Adoption of the Confusing Similar MEDIASITE MOSAIC

17.      On information and belief, Defendant, through its Defendant's Mark as used on web pages, provides, among other things, "Mosaic" and "Mosaic Pro" services that are identical or closely related to Plaintiff's services.   ***Exhibit G,*** attached hereto and incorporated herein by reference, shows, on information and belief, a present-day webpage containing a discussion regarding the MEDIASITE MOSAIC website. ***Exhibit H,*** attached hereto and incorporated herein by reference, shows webpages of a Google search result for MEDIASITE MOSAIC in which Defendant's website is listed first with the title "Mosaic - Create Powerful Content from Anywhere." ***Exhibit I,*** attached hereto and incorporated herein by reference, shows a printout of the webpage view-source: https://mediasite.com/mosaic/ that shows that the webpage is coded with the title "Mosaic - Create Powerful Content from Anywhere."

18.      On information and belief, Defendant's term MEDIASITE MOSAIC is used in connection with services for youth and adults that are within the group targeted by Plaintiff prior to the use of the Defendant's Mark and concurrent with such use.

19.      On information and belief, Defendant has, for example, used its MEDIASITE MOSAIC term in Washington, DC in connection with educational activities. Plaintiff also engaged in MOSAEC activities in Washington, DC prior to the initiation of Defendant's activities.

### E.     Prosecution In The United States Patent And Trademark Office (USPTO)

20.     Plaintiff is the owner of numerous registrations and applications on the
Principal Register of the United States Patent and Trademark Office for Plaintiff's Mark,
including:

| Mark | Registration No. | Plaintiff's Good and Services | Registration Date |
|------|-----------------|------------------------------|-------------------|
| MOSAEC | 5,778,338 | *"Computer application software for desktop computers and mobile devices, namely, software for compilations, rankings, ratings, reviews, referrals and recommendations relating to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities; Computer application software for desktop computers and mobile devices, namely, software for entering, accessing and tracking data related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation, leisure activities and social networking; Computer application software for desktop computers and mobile devices, namely, software for uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network; Computer application software for desktop computers and mobile devices, namely, software for displaying and sharing a user's location and finding, locating, and interacting with other users and places; Computer software to enhance the audio-visual capabilities of multimedia applications, namely, for the integration of text, audio, graphics, still images and moving pictures; Downloadable electronic newsletters in the field of entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities; Downloadable mobile applications for entering, accessing and tracking data related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation, leisure* | June 18, 2019 |

| | | | |
|---|---|---|---|
| | | *activities and social networking; Computer e-commerce software to allow users to perform electronic business transactions via a global computer network;"* in Class 009. | |
| MOSAEC | 5,284,032 | *"Providing temporary use of a non-downloadable web application for posting, searching, accessing, sharing, and tracking reviews, ratings, referrals, recommendations, and other information as well as advertising, uploading photos, adding videos, finding, locating, and interacting with other users, related to entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, restaurants, recreation and leisure activities;"* in Class 042. | September 12, 2017 |

The dates of first use given are as early as September 1998. (Printouts showing the above and their title status are attached as **Exhibit J**).

21. Additionally, as of the date of the filing of this complaint, Plaintiff has (i) secured federal registration for its MOSAEC mark in international classes 16, 18, 25, 38, 43 and 45 as well as (ii) applied for federal registration of its MOSAEC mark in international class 36, in connection with the following goods and services, notably:

| Additional Examples of Plaintiff's | Registration or US Serial No. | Additional    Good    /    Services | Registration or Application Date |
|---|---|---|---|
| MOSAEC | 5664353 | *"Printed instructional, educational, and teaching materials in the field of foreign languages and cross-cultural communication; Fiction books on a variety of topics; Non-fiction books on a variety of topics,"* in Class 016. | January 29, 2019 |

| MOSAEC | 5923726 | *"All-purpose carrying bags; Backpacks; Tote bags; Wallets including card holders"* in Class 018. | December 3, 2019 |
| MOSAEC | 6617428 | *"Hats; Pants; Shirts"* in Class 025. | January 18, 2022 |
| MOSAEC | 87/469,079 | *"Fundraising services, by means of sharing profits from the sale of socially responsible products with not-for-profit organizations, schools, and civic groups; Charitable fundraising services for namely, raising funds to support programs related to engagement in entertainment, film, fine arts, museums, literature, culture, music, sports, fashion, theater, dance, culinary, recreation and leisure activities; On-line business fundraising services;"* in Class 036. | May 31, 2017 |
| MOSAEC | 6110497 | *"Communication services, providing access to databases; providing on-line chat rooms and electronic bulletin boards for transmission of messages among users in the field of general interest; providing on-line chat rooms for social networking; providing on-line communications links which transfer the web site user to other local and global web pages; providing on-line forums for transmission of messages among computer users"* in Class 038. | July 28, 2020 |
| MOSAEC | 5,335,465 | *"Providing information in the field of temporary lodging and accommodations for travelers, namely, news, ratings, reviews and recommendations; Providing information, news and commentary in the field of dining;"* in Class 043. | November 14, 2017 |
| MOSAEC | 5,166,424 | *"On-line social networking services"* in Class 045. | March 21, 2017 |

22.     The application for registration of "**MEDIASITE MOSAIC**" was filed on July 21, 2020. Although the application lists the services as follows:

***"Downloadable and recorded computer software for capturing, recording, compressing, encoding, converting, editing, transcoding, packaging, distributing, streaming, delivering, playing, importing, exporting, and uploading audio and video clips; downloadable and recorded computer software for using audio and video clips; downloadable and recorded computer software for capturing, recording, compressing, encoding, converting, editing, transcoding, packaging, distributing, streaming, delivering, playing, importing, exporting, and uploading audio and video clips via a global computer network; downloadable and recorded computer software for using audio and video clips via a global computer network" in Class 009***

***"Providing online non-downloadable computer software for capturing, recording, compressing, encoding, converting, editing, transcoding, packaging, distributing, streaming, delivering, playing, importing, exporting, and uploading audio and video clips; providing online non-downloadable computer software for using audio and video clips; providing online non-downloadable computer software for capturing, recording, compressing, encoding, converting, editing, transcoding, packaging, distributing, streaming, delivering, playing, importing, exporting, and uploading audio and video clips via a global computer network; providing online non-downloadable computer software for using audio and video clips via a global computer network" in Class 042..***

The TTAB held that Plaintiff's likelihood of confusion claim is dismissed. (See ***Exhibit L***, attached hereto and incorporated herein by reference.)  Plaintiff asserts that the goods and services rendered by Defendant using Defendant's Mark are in actuality, confusingly similar to the goods and services rendered by Plaintiff in Class 9 as well as 42.

23.    On information and belief, Defendant also uses Defendant's Mark as part of the domain name https://mediasite.com/mosaic/and in connection with social media.  .

**F.    TTAB Opposition Proceeding**

24.    As referenced above, Plaintiff commenced an opposition proceeding before the TTAB opposing Defendant's federal registration of Defendant's Mark.  The opposition was filed on February 06, 2021.

25.     Plaintiff asserts that there is a clear and present likelihood of confusion between Plaintiff's Mark and Defendant's Mark.   Plaintiff asserts that the marks nevertheless are confusingly similar in sound, appearance, and commercial impression. Defendant's Mark is confusingly similar to Plaintiff's registered MOSAEC® Mark and MOSAEC trade name. Defendant's Mark incorporates MOSAIC which is confusingly similar in sound, appearance and commercial impression to the Plaintiff's MOSAEC® Mark. Note that the only difference in the Defendant's use of the word MOSAIC is the "I" in the MOSAIC portion of Defendant's Mark. Furthermore, the addition of the phrase "MEDIASITE" is unlikely to dispel confusion as many consumers are apt to believe that MEDIASITE MOSAIC is a good or service offered by  Plaintiff in connection with its long, extensive, and continuous use of the MOSAEC® Mark and MOSAEC trade name to allows users to connect with other users and to provide electronic media or information, including text, audio, graphics, still images and moving pictures."

26.     Even further, Defendant's Mark is used in connection with strikingly similar services and goods.  The services offered by Defendant in connection with which Defendant's Mark is used, as shown in its website are similar and arguably identical to some of the services offered by Plaintiff in connection with which Plaintiff's Mark is used. Moreover, the services are offered through overlapping channels to overlapping classes of users in conditions that do not demand lengthy examination or and a long period of deliberation.

27.     By inference, Defendant might very well claim a right of control over Plaintiff's Mark as used as a designator of the source of services of Plaintiff (substantially

similar to those listed in Defendant's registration), past and present, with the origins of such rights and the efforts to register such use solely for Defendant.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

28.    Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully forth herein.

29.    Defendant's actions described above and below constitute use in commerce of a reproduction, counterfeit, copy or colorable imitation of Plaintiff's federally registered trademark, "MOSAEC", in connection with the sale, offering for sale, distribution, or advertising of goods and services on or in connection with which such use is likely to cause consumer confusion, deception or mistake as to source, sponsorship, or approval of Defendant's aforesaid goods or services in violation of federal law.

30.    As set forth above, Plaintiff is the registered owner of the "MOSAEC" trademark.

31.    Despite that fact, Defendant, without authorization from Plaintiff, has used and continues to use the infringing "MEDIASITE MOSAIC" name in connection with Defendant's services and website.

32.    Defendant's unauthorized and willful use of the infringing "MEDIASITE MOSAIC" mark in connection with its services and website is likely to cause confusion and mistake for the public and is likely to deceive consumers as to the source or origin of Defendant's services and website.

33.     Defendant's unauthorized and willful use of the infringing "MEDIASITE MOSAIC" mark in connection with its services and website has caused, and continues to cause irreparable injury to Plaintiff's brand, business, and goodwill represented by the "MOSAEC" trademark, in an amount that cannot be ascertained, and unless enjoined, will cause further irreparable injury, leaving Plaintiff no adequate remedy at law.

34.     Defendant's acts of trademark infringement are exceptional as Defendant has been aware of Plaintiff's "MOSAEC" mark since at least 2019. As a result of Defendants exceptional and willful violations, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

## SECOND CAUSE OF ACTION
### (Federal Unfair Competition – 15 U.S.C. 1125(a))

35.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

36.     Defendant's actions described above constitute use in commerce of a word, name, or false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation connection, or association of Defendant with Plaintiff or as to the origin, sponsorship, or approval of the goods offered in connection therewith in violation of federal law.

37.     Defendant's willful use of the infringing "MEDIASITE MOSAIC" mark in connection with its services and website constitutes false and deceptive practices and is likely to deceive or confuse consumers as to the source or origin of Defendant's services and website.

14

38.     Defendant's unauthorized and willful use of the infringing "MEDIASITE MOSAIC" mark in connection with its services and website has caused, and continues to cause irreparable injury to Plaintiff's brand, business, and goodwill represented by the "MOSAEC" trademark, in an amount that cannot be ascertained, and unless enjoined, will cause further irreparable injury, leaving Plaintiff no adequate remedy at law.

39.     Defendant's unfair competition is exceptional as Defendant has been aware of Plaintiff's "MOSAEC" mark since at least 2019. As a result of Defendants exceptional and willful violations, Plaintiff is entitled to treble damages, attorney's fees and costs, punitive damages and all other damages and relief available at law or in equity, including permanent injunctive relief.

### THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)

40.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

41.     Plaintiff owns all right, title, and interest in and to the "MOSAEC" trademark as aforesaid, including all common law rights in such mark.

42.     The acts set forth above by Defendant constitute trademark infringement in violation of the common law of the State of New York.

43.     Defendant intends to continue its willfully infringing acts unless constrained by this Court.

44.     Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff's brand, business, and goodwill as represented by the "MOSAEC" mark unless enjoined by this Court.

**FOURTH CAUSE OF ACTION**
**(Common Law Unfair Competition)**

45.     Plaintiff incorporates by reference and realleges each of the allegations set forth above as if fully set forth herein.

46.     Defendant's acts described herein constitute unfair competition in violation of the common law of the State of New York.

47.     Defendant intends to continue engaging in unfair competition and its willfully infringing acts unless constrained by this Court.

48.     Defendant's actions have caused, and will continue to cause, irreparable harm to Plaintiff's brand, business, and goodwill as represented by the "MOSAEC" mark unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in its favor as follows:

A.     Declare that Defendant's unauthorized conduct violates Plaintiff's rights under the Lanham Act (15 U.S.C. § 1051 et seq.), and the common law of New York and any other applicable state laws;

B.     Deny federal registration of Defendant's infringing mark with the United States Patent and Trademark Office as a matter of law;

C.     Immediately and permanently enjoin Defendant, their officers, directors, agents, servants, employees, representatives, attorneys, related companies,

successors, assigns, and all others in active concert or participation with them from:

I.      using the name "MEDIASITE MOSAIC" or any derivative in connection with any services and websites similar to that of Plaintiff;

II.     using the URL *https://mediasite.com/mosaic/* or any derivative that may encompass the "MEDIASITE MOSAIC" mark and would be confusingly similar to Plaintiff's "MOSAEC" trademark;

III.    engaging in any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that products or services offered or distributed by Defendant are authorized, sponsored, licensed, endorsed, promoted, or condoned by Plaintiff, or are otherwise affiliated with or connected to Plaintiff;

IV.     otherwise competing unfairly with Plaintiff in any manner;

V.      aiding any other party in engaging in any acts prohibited by this paragraph; and

VI.     continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint.

D.      Order that Defendant, pursuant to 15 U.S.C. §1116, serve on Plaintiff within thirty (30) days after service on Defendant of the requested mandatory permanent, or preliminary injunction orders, a report in writing under oath

setting forth in detail the manner and form in which the Defendant has complied with the injunction(s).

E.      Order Defendant to disgorge and account to Plaintiff all of Defendant's profits and any damages sustained by Plaintiff arising from Defendant's acts of willful trademark infringement and unfair competition, which are presumed willful under 15 U.S.C. §1117(e) for the purposes of Defendant's Lanham Act violations, and that Plaintiff be awarded the greater of (i) three times Defendant's profits, or (ii) three times any damages sustained by Plaintiff, under 15 U.S.C. §1117, plus prejudgment interest;

F.      Order Defendant to pay Plaintiff enhanced damages for their oppression, malice, and gross negligence, whether grounded on proof of actual damages incurred by Plaintiff or on proof of Defendant's unjust enrichment which are presumed willful under 15 U.S.C. §1117(e) for the purposes of Defendant's Lanham Act violations;

G.      Award Plaintiff its costs and disbursement incurred in connection with this action, as well as in connection with the proceeding in the USPTO in connection with the previous opposition proceeding, including all costs, attorneys' fees and expenses, on the ground that this is an exceptional case under 15 U.S.C. §1117; and

H.      Award Plaintiff such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury of all issues triable of right by jury.


Respectfully submitted,


Dated: November 27, 2023                    By: /Willard A Stanback/


Willard A. Stanback
Willard Alonzo Stanback PC
36 West Lafayette Street, Suite 103
Trenton, New Jersey 08608
Telephone: 855-614-1111
E-mail: willardalonzo@stanback-pc.com

ATTORNEY FOR PLAINTIFF

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and accurate copy of the **COMPLAINT AND**

**JURY DEMAND** has been served on Defendant (Sonic Foundry, Inc.) by delivering

the document via email to Applicant's Attorney:


JOSEPH T. LEONE
DEWITT LLP
2 EAST MIFFLIN STREET, SUITE 600
MADISON, WI 53703
UNITED STATES
jtltm@dewittllp.com


Dated: November 27, 2023          By:     <u>/Willard A Stanback/</u>
                                          Willard A Stanback

20